UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GONDECK and PETER G. O'MALLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | 11 C 6341 |
| vs. | ) | |
| | ) | Judge Feinerman |
| A CLEAR TITLE AND ESCROW EXCHANGE, LLC, | ) | |
| STEPHEN J. CORMIER, JUSTYNA MICHALOWSKA, | ) | |
| FIDELITY NATIONAL TITLE GROUP (d/b/a CHICAGO | ) | |
| TITLE INSURANCE COMPANY and TICOR TITLE), | ) | |
| CHICAGO TITLE INSURANCE COMPANY, TICOR | ) | |
| TITLE INSURANCE COMPANY, SRV ASSOCIATES, | ) | |
| LLC, THE LUX GROUP, LLC, SRV HOLDINGS & | ) | |
| ASSOCIATES, LLC, MAREK R.V. HARRISON, | ) | |
| MICHAEL SPIES, and FIFTH THIRD BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs James Gondeck and Peter G. O'Malley claim in this lawsuit that they were the victims of a fraudulent real estate scheme involving the misappropriation of funds they deposited into an escrow account that Defendant A Clear Title and Escrow Exchange maintained at Defendant Fifth Third Bank. After Fifth Third and Defendant Fidelity National Title Group moved to dismiss the first amended complaint, the court invited Plaintiffs to submit a second amended complaint setting forth all their factual allegations. 2012 WL 773119 (N.D. Ill. Mar. 8, 2012). The second amended complaint alleges, among other things, that Fidelity, Defendant Chicago Title Insurance Company, and Defendant Ticor Title Insurance Company (collectively, "Title Companies") are directly liable for their own negligence regarding the escrow account and vicariously liable for A Clear Title's misconduct. Doc. 68. The Title Companies have moved

under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against them. The motion is granted in part and denied in part.

## Background

The second amended complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true on a Rule 12(b)(6) motion. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). In evaluating a motion to dismiss, the court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The court also must consider additional facts set forth in Plaintiffs' opposition brief or supported by attachments to the brief, so long as those facts "are consistent with the pleadings." *Ibid*. To the extent an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). The following sets forth the facts as favorably to Plaintiffs as permitted by the second amended complaint and other materials that may be considered on a Rule 12(b)(6) motion.

A Clear Title and Defendants Stephen Cormier, Marek Harrison, and Michael Spies promoted a Real Estate Funding Program ("REFP") to many individuals, including Plaintiffs. Doc. 68 at ¶¶ 3-4. The potential participants were told that they could secure funding for a real estate project by depositing 10% of the necessary funds into an escrow account; those funds would then be used to secure a letter of credit or a bank guarantee for the project. *Id*. at ¶ 5; Doc. 68-1. The potential participants were promised that their funds would be returned within 15-20

business days.  Doc. 68 at ¶ 6.  They also were provided with a "due diligence" package stating that A Clear Title is "a full service title & escrow company, licensed, bonded and insured. Chicago Title is our underwriter which is a part of the Fidelity National Title Group, one of the largest insurers in the world."  *Id*. at ¶¶ 10-11, 53; Doc. 68-2 at 1.

In July 2010, Spies recommended the REFP to Gondeck as a way for him to obtain funding to purchase property in Illinois and to build a home on the property.  Doc. 68 at ¶¶ 30-31, 38, 50.  On July 6, Gondeck went to Chicago Title's office in Lake Zurich, Illinois, and spoke with the office manager, Tara Doherty.  *Id*. at ¶ 60.  Gondeck explained the REFP and stated that he was about to transfer funds into A Clear Title's escrow account at Fifth Third Bank.  *Ibid*.  He asked Doherty to confirm that A Clear Title was an agent in good standing with Chicago Title, that A Clear Title was insured by Chicago Title, and that the wire transfer information provided by A Clear Title (Doc. 68-5) was legitimate.  Doc. 68 at ¶ 60.  Doherty contacted Ernie Winn, Vice President of Fidelity's Florida agency, and explained Gondeck's request.  *Id*. at ¶ 61.  Winn emailed Doherty a screenshot of and link to a Florida Department of Financial Services web page listing A Clear Title as a "Title Ins Agency" of Ticor.  *Ibid*.; Doc. 76-2 at 11-12.  Doherty forwarded Winn's email to Gondeck.  Doc. 68 at ¶ 62; Doc. 76-2 at 26-27.  To follow up on Gondeck's request to verify the wire transfer information, Doherty emailed Crystie Pupillo, an employee of Fifth Third Bank.  Doc. 68 at ¶¶ 63-65; Doc. 76-2 at 15, 19-20.  Pupillo told Doherty that the wire transfer information was accurate (except for a small correction), and Doherty forwarded Pupillo's email to Gondeck.  Doc. 68 at ¶ 65; Doc. 76-2 at 24.  Gondeck also tried to verify the agency relationship between A Clear Title and Chicago Title by researching the companies on the internet.  Doc. 68 at ¶¶ 51, 69.

Gondeck then entered into an Escrow Release and a Sole Escrow Agreement with A Clear Title; the agreement provided that he would transfer $250,000 to the escrow account and that the funds would be returned after 21 days. Doc. 68 at ¶¶ 54-57; Docs. 68-3, 68-4. Gondeck transferred the money on July 8, 2010. Doc. 68 at ¶ 70. Over twenty-one days passed without the real estate purchase closing and without Gondeck's money being returned. *Id*. at ¶ 71. On August 17, Gondeck entered into another Sole Escrow Agreement that extended the deadline to August 31. *Ibid*.; Doc. 68-6. On October 12, the deadline was again extended until October 31. Doc. 68 at ¶ 72; Doc. 68-7. On numerous occasions, including in a November 15 letter, A Clear Title represented to Gondeck that his money remained in the escrow account. Doc. 68 at ¶ 73; Doc. 68-8.

Spies marketed the REFP to O'Malley as an investment opportunity. Doc. 68 at ¶ 40. Spies, Cormier, and Harrison told O'Malley that if he deposited $250,000 into an escrow account to be used for real estate financing, he would be paid a $100,000 fee. *Id*. at ¶¶ 42, 45, 50, 75-76. Prior to agreeing to participate in the REFP, O'Malley researched A Clear Title on the internet and found the Florida Department of Financial Services web page that listed A Clear Title as a "Title Ins Agency" of Chicago Title. *Id*. at ¶ 81; Doc. 68-10. He also reviewed the web sites of A Clear Title and Chicago Title in an attempt to confirm their agency relationship. Doc. 68 at ¶¶ 51, 82. On November 3, 2010, O'Malley agreed to transfer $250,000 to A Clear Title's escrow account, and Defendant SRV & Associates agreed that the funds plus $100,000 would be returned to O'Malley by November 15. *Id*. at ¶ 78; Doc. 68-9. O'Malley wired the money the next day. Doc. 68 at ¶ 88. On February 7, 2011, A Clear Title confirmed in writing that the funds were still in the escrow account and would be released within ten business days.

*Id*. at ¶ 89; Doc. 68-11. Sometime in February 2011, O'Malley spoke with Chicago Title and was told that A Clear Title was its agent. Doc. 68 at ¶ 84.

Throughout 2010 and 2011, Spies, Harrison, and Cormier told Plaintiffs that there had been delays in completing the funding process but that it would be done soon. *Id*. at ¶¶ 14, 91-96. Based on those representations, Plaintiffs believe that their money remained in the escrow accounts. *Id*. at ¶ 22. In March 2011, Gondeck contacted Chicago Title to express his belief that A Clear Title was misappropriating client funds. *Id*. at ¶ 28. The Title Companies did not investigate or take any action to stop A Clear Title, and A Clear Title remained an agent until August 16, 2011. *Id*. at ¶ 29. Eventually Plaintiffs had enough and demanded, to no avail, the return of their money. *Id*. at ¶¶ 97-98. Plaintiffs now believe that Spies, Cormier, and Harrison absconded with their funds. *Id*. at ¶¶ 13, 100-02.

## Discussion

The second amended complaint purports to state vicarious liability claims and a direct negligence claim against the Title Companies. Those claims will be considered in turn, though Fidelity's status as a defendant will be addressed first.

### A.      Fidelity's Status as a Defendant

Chicago Title is a subsidiary of Fidelity, and Ticor is a former subsidiary of Fidelity that merged with Chicago Title in June 2010. Doc. 68 at ¶¶ 7-8; Doc. 76 at 6 n.1. The Title Companies argue that Fidelity should be dismissed as a defendant because "Plaintiffs have made no factual allegations relating to conduct **by Fidelity**." *Ibid*. Plaintiffs do not address this argument in their opposition brief, and therefore have forfeited the point. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924,

926 (7th Cir. 2007); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995).

Dismissal is appropriate even putting aside forfeiture, as the second amended complaint fails to

allege that Fidelity itself engaged in misconduct and does not allege facts that would justify

piercing the corporate veil to hold Fidelity liable for Chicago Title's or Ticor's supposed

misconduct. *See Luka v. Procter & Gamble Co.*, 785 F. Supp. 2d 712, 718 (N.D. Ill. 2011).

Because the court's earlier dismissal order stated that, "[a]bsent extraordinary circumstances, no

further amendments to the complaint will be permitted," Doc. 65, the dismissal of Fidelity is

with prejudice. For the sake of simplicity, Chicago Title and Ticor henceforth will be referred to

together as "Chicago Title."

### B. Vicarious Liability

"It is well established that traditional vicarious liability rules ordinarily make principals

or employers vicariously liable for acts of their agents or employees in the scope of their

authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *see also Woods v. Cole*,

693 N.E.2d 333, 336 (Ill. 1998); *Lawlor v. N. Am. Corp. of Ill.*, 949 N.E.2d 155, 170 (Ill. App.

2011); *Lang v. Silva*, 715 N.E.2d 708, 716 (Ill. App. 1999); Restatement (Second) of Agency

§§ 216, 265. "An agent's authority may be either actual or apparent." *Sphere Drake Ins. Ltd. v.*

*Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004) (internal quotation marks omitted). A

principal also may be liable where an agent acts outside the scope of its actual or apparent

authority but the principal subsequently ratifies the agent's acts. *See id.* at 677; Restatement

(Second) of Agency § 82.

Plaintiffs pursue all three vicarious liability theories. They claim that Chicago Title gave

A Clear Title actual authority to engage in escrow-related services on Chicago Title's behalf.

Doc. 68 at ¶ 145. They also claim that Chicago Title's conduct gave A Clear Title apparent authority to act as its agent for escrow-related services. *Id*. at ¶¶ 154-55. And they claim that Chicago Title has done nothing to disclaim that apparent authority, thereby ratifying A Clear Title's acts. Doc. 90 at 12-14. The three theories are considered in turn.

### 1. Actual Authority

"[A]ctual authority may be express or implied." *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000) (internal quotation marks omitted). "[A]n agent has express authority when the principal explicitly grants the agent the authority to perform a particular act," and an agent "has implied authority for … anything reasonably necessary to effective execution of his express authority." *Ibid*. (internal quotation marks omitted).

Chicago Title entered into an Issuing Agency Contract with A Clear Title. Doc. 76-2 at 2-9. The contract did not grant Chicago Title express authority to provide escrow services on Chicago Title's behalf. The contract said that A Clear Title was Chicago Title's agent "for the sole purpose of issuing title insurance commitments, policies, endorsements and other title assurances approved by [Chicago Title] … relating to real property located [in Florida]." Doc. 76-2 at 2. Nor did A Clear Title have implied authority to provide escrow services on Chicago Title's behalf. In fact, the Issuing Agency Contract affirmatively denies that A Clear Title is Chicago Title's Agent for escrow services: "The parties ... acknowledge that [A Clear Title] is not an agent of [Chicago Title] for purposes of conducting a Closing," which defined as "the handling and disbursement of settlement funds or the providing of settlement services." *Id*. at 3-4. "Settlement services" are services necessary to close a real estate transaction, which includes the provision of escrow services. *See Guebara v. Saxon Mortg.*, 2011 WL 1670762, at *3 (E.D.

Cal. May 3, 2011); *Jankanish v. First Am. Title Ins. Co.*, 2009 WL 779330, at *3 (W.D. Wash. Mar. 23, 2009) ("[e]scrow services are 'settlement services' under" the Real Estate Settlement Procedures Act) (citing 24 C.F.R. § 3500.2)); 24 C.F.R. § 3500.2 (noting that "settlement" may be referred to as "escrow" in some jurisdictions).

The Issuing Agency Contract by itself need not doom Plaintiffs' actual authority theory, for it is possible that Chicago Title gave A Clear Title actual authority through a separate oral or written agreement. *See Guar. Residential Lending, Inc. v. Int'l Mortg. Ctr., Inc.*, 305 F. Supp. 2d 846, 861 (N.D. Ill. 2004). However, the second amended complaint does not allege facts supporting the existence of any such separate agreement; indeed, the Issuing Agency Contract states that it "set[s] forth the entire understanding and agreement between the parties hereto with respect to the subject matter hereof." Doc. 76-2 at 5-6. Accordingly, the actual authority claim against Chicago Title is dismissed. *See Wells Fargo Bank, N.A. v. Old Republic Title Ins. Co.*, 413 F. App'x 569, 574 (4th Cir. 2011) ("Courts throughout the country … agree that … an express limitation on an [agent's ability to provide escrow or settlement services] controls."); *Bergin Fin., Inc. v. First Am. Title Co.*, 397 F. App'x 119, 124-25 (6th Cir. 2010); *Bluehaven Funding, LLC v. First Am. Title Ins. Co.*, 594 F.3d 1055, 1059 (8th Cir. 2010); *Harken Fin. Servs. v. Broadridge Fin. Solutions, Inc.*, 2009 WL 3617536, at *4 (N.D. Ill. Oct. 29, 2009) (dismissing an actual authority claim where the complaint alleged no supporting facts).

## 2. Apparent Authority

"Under the doctrine of apparent authority, a principal will be bound not only by the authority that it actually gives to another, but also by the authority that it appears to give. Apparent authority arises when a principal creates, by its words or conduct, the reasonable

impression in a third party that the agent has the authority to perform a certain act on its behalf."
*Opp*, 231 F.3d at 1065 (internal quotation marks and citations omitted).  Under Illinois law, a
plaintiff seeking redress under an apparent authority theory must show that: "(1) the principal
consented to or knowingly acquiesced in the agent's exercise of authority; (2) based on the
actions of the principal and agent, the third person reasonably concluded that the party was an
agent of the principal; and (3) the third person justifiably and detrimentally relied on the agent's
apparent authority."  *Sphere Drake*, 376 F.3d at 673.  Because "only the words or conduct of the
alleged principal, not the alleged agent, establish the … apparent authority of an agent," *Opp*,
231 F.3d at 1064 (internal quotation marks and alterations omitted), only Chicago Title's
conduct need be considered.

      Plaintiffs' apparent authority theory is plausible.  Gondeck told Doherty, a Chicago Title
employee, that he was about to deposit money into A Clear Title's escrow account and asked her
to confirm that A Clear Title was Chicago Title's agent.  This request put Doherty on notice that
A Clear Title was purporting to act as its agent for *escrow* services, not simply for title services.
Doherty emailed Gondeck back "Here you go!!!!!!" and attached a screenshot of a Florida
Department of Financial Services web page listing the "licensee details" for A Clear Title.  Doc.
76-2 at 11-12.  Although the screenshot reflects only that A Clear Title was a "Title Ins Agency"
of Ticor, the unqualified nature of Doherty's response—and particularly her failure to make clear
that A Clear Title was Chicago Title's agent for title services only—made it reasonable for
Gondeck to conclude that Doherty meant to convey that A Clear Title was Chicago Title's agent
for escrow services as well.  The second amended complaint also adequately alleges that
Gondeck detrimentally relied on Doherty's communications.  Doc. 68 at ¶ 68.

As for O'Malley, he contacted Chicago Title in February 2011 and was told that A Clear Title was Chicago Title's agent. Doc. 68 at ¶ 84. This alone satisfies the there elements of an apparent authority claim. Contrary to Chicago Title's submission, detrimental reliance is not defeated by the allegation that O'Malley contacted Chicago Title only after he had transferred the money to A Clear Title. When that contact was made in February 2011, O'Malley still may have been able to withdraw his money from the escrow account if he had been informed of the limited nature of the agency relationship. *Id*. at ¶ 22. Evidence adduced in discovery may cast a different light on these matters, but for now the apparent agency theory survives dismissal.

Chicago Title also contends that the apparent authority theory is defeated by Plaintiffs' lack of diligence in verifying the supposed agency relationship between A Clear Title and Chicago Title. "[I]f a person has means of knowledge reasonably open to him as to the limits of the agent's authority, he cannot hold the principal [liable] unless he uses ordinary diligence to ascertain [those limits]." *Sphere Drake*, 376 F.3d at 673 (quoting Restatement (Second) of Agency § 167 cmt. a). That is, "[a] third party dealing with an agent has the obligation to verify both the fact and extent of the agent's authority." *Malcak v. Westchester Park Dist.*, 754 F.2d 239, 245 (7th Cir. 1985). Plaintiffs did just that. They contacted Chicago Title to verify the agency relationship, and they conducted internet research to ascertain as best they could whether A Clear Title was Chicago Title's agent for escrow services. Those efforts were sufficiently diligent for purposes of an apparent authority claim. *See Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 795 (Ill. 1993) ("Where the principal creates the appearance of authority, the principal will not be heard to deny the agency to the prejudice of an innocent party, who has

been led to rely upon the appearance of authority in the agent.") (internal quotation marks omitted).

Chicago Title next asserts that because the subject transactions were investment schemes rather than real estate transactions, it was unreasonable for Plaintiffs to believe that A Clear Title was Chicago Title's agent, given that Chicago Title is only in the business of real estate transactions. The purported distinction between real estate investment schemes and real estate transactions is illusory. Gondeck participated in the REFP to buy land and build a home—surely a type of real estate transaction. And while O'Malley effectively viewed REFP as an investment vehicle, he was doing so as part of a real estate transaction. Given this, the court cannot say as a matter of law on the pleadings that Plaintiffs could not reasonably have believed that A Clear Title was acting as Chicago Title's escrow agent. *See McNamee v. Sandore*, 869 N.E.2d 1102, 1115 (Ill. App. 2007) ("the existence and scope of an agency relationship is a fact-intensive inquiry reserved for the finder of fact unless the parties' relationship is so clear as to be undisputed").

Finally, Chicago Title argues that it cannot be held vicariously liable for A Clear Title's acts because those acts were solely for A Clear Title's own benefit and thus fell outside the scope of its apparent authority. For this proposition, Chicago Title cites *Hartmann v. Prudential Ins. Co. of Am.*, 9 F.3d 1207, 1210 (7th Cir. 1993). *Hartmann*, however, recognizes this crucial exception:

> There is an exception … to the rule that a principal is not liable for an agent's wrongdoing when the agent is acting wholly for himself. If the agent, acting with apparent authority, commits a fraud against a third party who reasonably believed that he was entering into a bona fide transaction with the agent's principal, the principal is chargeable with the fraud.

-11-

*Id*. at 1211 (citing *Gleason v. Seaboard Air Line Ry.*, 278 U.S. 349 (1929)); *see also Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982) ("a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority"); Restatement (Second) of Agency § 216 cmt. a ("With [the exception of apparent agency] neither a master nor a principal … is liable in an action of tort on the ground of respondeat superior for harm caused by a servant or other agent acting wholly for his own purposes."). Thus, Chicago Title's argument does not defeat Plaintiffs' apparent authority theory.

### 3. Ratification

"Ratification is the equivalent of authorization, but it occurs after the fact, when a principal gains knowledge of an unauthorized transaction but then retains the benefits or otherwise takes a position inconsistent with nonaffirmation.  Generally, the question of ratification turns on the principal's intent to affirm." *Progress Printing Corp. v. Jane Byrne Political Comm.*, 601 N.E.2d 1055, 1067 (Ill. App. 1992) (internal citations omitted); *see also Sphere Drake*, 376 F.3d at 677; *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 822 (N.D. Ill. 2008); Restatement (Second) Agency § 82 ("Ratification is the affirmance … of a prior act").  Ratification "need not be express; it may be inferred from surrounding circumstances." *Progress Printing*, 601 N.E.2d at 1067; *see also Sphere Drake*, 376 F.3d at 677; Restatement (Second) Agency § 83.

The second amended complaint pleads no facts plausibly suggesting that Chicago Title affirmed A Clear Title's acts.  The most that can be is that Chicago Title sat on its hands after Gondeck informed it of A Clear Title's possible fraud.  Under other circumstances, such as if

Chicago Title had benefitted from the fraud, ratification might be inferred from Chicago Title's inaction. *See Sphere Drake*, 376 F.3d at 677; Restatement (Second) Agency § 94. But it cannot be inferred from Chicago Title's inaction that it approved of acts by A Clear Title that amounted to outright theft and that did not benefit Chicago Title in any way. *See* Restatement (Second) Agency § 94 cmt. a, Illustration 1 & cmt. d; *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*, 982 F.2d 1086, 1101 (7th Cir. 1992) (in a Fair Housing Act case, the principal's "inactivity [did not show] knowledge or ratification of the discriminatory acts of [its] agents"). Accordingly, Plaintiffs' ratification theory fails.

\* \* \*

Although Plaintiffs' vicarious liability claim survives on an apparent authority theory, Chicago Title cannot be held vicariously liable for A Clear Title's alleged civil RICO violations. "Vicarious liability … has only limited application to civil RICO to avoid holding vicariously liable a corporation that was the *victim* of a RICO violation. … To accommodate these concerns, we have noted that the doctrine may apply only when 1) the corporation has derived some benefit from the RICO violation and 2) imposing vicarious liability is not inconsistent with the intent of Congress." *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1306 (7th Cir. 1987). Because nothing in the second amended complaint suggests that Chicago Title benefitted from A Clear Title's alleged misconduct, Doc. 68 at ¶¶ 13, 100-02, Chicago Title cannot be held vicariously liable for A Clear Title's civil RICO violations. Plaintiffs do not even address this issue in their opposition brief, thereby forfeiting the point. *See Alioto*, 651 F.3d at 721; *Wojtas*, 477 F.3d at 926; *Stransky*, 51 F.3d at 1335.

Plaintiffs also seek to hold Chicago Title vicariously liable for treble or punitive damages associated with Plaintiffs' claims against A Clear Title. To support its view that it cannot be held vicariously liable for enhanced damages under Florida's civil theft statute, Chicago Title cites *McArthur Dairy, Inc. v. Original Kielbs, Inc.*, 481 So.2d 535, 540 (Fla. App. 1986), which holds that the principal of an agent guilty of theft or conversion "is vicariously liable for punitive damages under ordinary rules of civil liability provided: (a) the theft or conversion was committed within the scope of the perpetrator's [authority], and (b) the employer was guilty of some fault which foreseeably contributed to the plaintiff's injury." *See also Priority Healthcare Corp. v. Surajit Chaudhuri, M.D., P.A.*, 2008 WL 4459041, at *3 (M.D. Fla. Oct. 1, 2008). Chicago Title also contends and cites authority for the proposition that it cannot be held vicariously liable for punitive damages under Illinois law. Plaintiffs do not respond to these arguments, resulting in another forfeiture. *See Alioto*, 651 F.3d at 721; *Wojtas*, 477 F.3d at 926; *Stransky*, 51 F.3d at 1335.

**C.     Direct Liability**

Plaintiffs seek to hold Chicago Title directly liable for negligence because it did not provide accurate information regarding its relationship with A Clear Title and because it did not investigate A Clear Title's wrongdoing. Chicago Title perfunctorily counters that it owed no duty of care to Plaintiffs. The argument has no merit.

"[T]he scope of the tort duty of care—whether it extends to bystanders, customers, investors, unforeseeable plaintiffs (as in the famous *Palsgraf* case), and so forth—is given by the common law." *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004) (citations omitted). As such, a defendant seeking dismissal of a negligence claim on the ground that it owed no duty

-14-

to the plaintiff must cite precedent concerning whether a duty exists under comparable circumstances or, if no such case law is available, to argue why a duty should not be imposed. Having failed to do so, Chicago Title cannot obtain dismissal of the negligence claim, at least at the Rule 12(b)(6) stage. *See Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008) ("It is not the job of this court to develop arguments for [parties]"); *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008) ("Because it is not the obligation of this Court to research and construct the legal arguments available to parties, these arguments are waived and warrant no discussion.") (internal citations omitted); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). It is true that Chicago Title briefly references the "no duty to act" rule, Doc. 100 at 20, but that general rule dodges the very question at issue: whether a principal has a duty of care to parties dealing with its apparent agent.

### Conclusion

The Title Companies' motion to dismiss is granted in part and denied in part. The claims against Fidelity are dismissed with prejudice. The vicarious liability claims against Chicago Title and Ticor survive solely on an apparent authority theory, though those two defendants may not be held vicariously liable for A Clear Title's alleged civil RICO violation or for treble or punitive damages. The negligence claims may proceed against Chicago Title and Ticor.

August 22, 2012

_____
United States District Judge