UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES GONDECK and PETER G. O'MALLEY, | ) |
| | ) |
| Plaintiffs, | ) 11 C 6341 |
| vs. | ) |
| | ) Judge Feinerman |
| A CLEAR TITLE AND ESCROW EXCHANGE, LLC, | ) |
| STEPHEN J. CORMIER, JUSTYNA MICHALOWSKA, | ) |
| FIDELITY NATIONAL TITLE GROUP (d/b/a CHICAGO | ) |
| TITLE INSURANCE COMPANY and TICOR TITLE), | ) |
| CHICAGO TITLE INSURANCE COMPANY, TICOR | ) |
| TITLE INSURANCE COMPANY, SRV ASSOCIATES, | ) |
| LLC, THE LUX GROUP, LLC, SRV HOLDINGS & | ) |
| ASSOCIATES, LLC, MAREK R.V. HARRISON, and | ) |
| MICHAEL SPIES, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs James Gondeck and Peter G. O'Malley allege in their second amended complaint that they were the victims of a fraudulent real estate scheme involving the misappropriation of funds they deposited into an escrow account that Defendant A Clear Title and Escrow Exchange, LLC maintained at Fifth Third Bank. Doc. 68. (Fifth Third recently was dismissed as a defendant. Doc. 140.) Plaintiffs claim that Defendant Justyna Michalowska, a Managing Member of A Clear Title, and Defendant Michael Spies, a Home Loan Manager in the Retail Mortgage Department for Bank of America, took part in the alleged scheme and bear responsibility for Plaintiffs' losses. Spies and Michalowska have separately moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against them. Docs. 104, 117. Michalowska's motion is denied, and Spies's motion is granted in part and denied in part.

**Background**

The second amended complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true on a Rule 12(b)(6) motion. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). In evaluating a motion to dismiss, the court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The court also must consider additional facts set forth in the plaintiff's opposition brief or supported by attachments to the brief, so long as those facts "are consistent with the pleadings." *Ibid*. The following sets forth the facts as favorably to Plaintiffs as permitted by the second amended complaint and the other materials that may be considered on a Rule 12(b)(6) motion.

Spies, A Clear Title, and Defendants Stephen Cormier and Marek Harrison promoted a Real Estate Funding Program ("REFP") to many individuals, including Plaintiffs. Doc. 68 at ¶¶ 3-4. The potential participants were told that they could secure funding for a real estate project by depositing 10% of the necessary funds into an escrow account; those funds would then be used to secure a letter of credit or a bank guarantee for the project. *Id*. at ¶ 5; Doc. 68-1. The potential participants were promised that their funds would be returned within 15-20 business days. Doc. 68 at ¶ 6.

In July 2010, Spies recommended the REFP to Gondeck as a way for him to obtain funding to purchase property in Illinois and to build a home on the property. Doc. 68 at ¶¶ 30-31, 38, 50. Gondeck and A Clear Title then entered into an Escrow Release and a Sole Escrow

Agreement, which provided that he would transfer $250,000 to the escrow account and that the funds would be returned after 21 days. Doc. 68 at ¶¶ 54-57; Docs. 68-3, 68-4. On numerous occasions, including in a letter dated November 15, 2010, A Clear Title represented to Gondeck that his money remained in the escrow account. Doc. 68 at ¶ 73; Doc. 68-8.

Spies marketed the REFP to O'Malley as an investment opportunity. Doc. 68 at ¶ 40. Spies, Cormier, and Harrison told O'Malley that if he deposited $250,000 into an escrow account to be used for real estate financing, he would be paid a $100,000 fee. *Id*. at ¶¶ 42, 45, 50, 75-76. On November 3, 2010, O'Malley agreed to transfer $250,000 to A Clear Title's escrow account, and Defendant SRV & Associates agreed that the funds plus $100,000 would be returned to O'Malley by November 15. *Id*. at ¶ 78; Doc. 68-9. O'Malley wired the money the next day. Doc. 68 at ¶ 88. On February 7, 2011, A Clear Title confirmed in writing that the funds were still in the escrow account and would be released within ten business days. *Id*. at ¶ 89; Doc. 68-11.

Spies repeatedly told Gondeck and O'Malley that the escrow deposit funds were going to be used only for proof of funds and would not be at risk. Doc. 68 at ¶ 52. Throughout 2010 and 2011, Spies, Harrison, and Cormier told Plaintiffs that there had been delays in completing the funding process but that it would be done soon. *Id*. at ¶¶ 14, 91-96. Spies, Harrison, and Cormier also provided Plaintiffs with false and fictitious statements, along with false and/or forged documents, representing that they were engaged in ongoing negotiations with banks and other investors. *Id*. at ¶¶ 92, 96. Eventually Plaintiffs had enough and demanded, to no avail, the return of their money. *Id*. at ¶¶ 97-98. Plaintiffs now believe that Spies, Cormier, and Harrison absconded with their funds. *Id*. at ¶¶ 13, 100-02.

At noted above, Michalowska was a Managing Member of A Clear Title. *Id*. at ¶ 5. At all relevant times, Michalowska was aware of the above-referenced scheme and the misappropriation of escrow funds from the accounts at Fifth Third. *Id*. at ¶ 17. At all relevant times, Michalowska was aware that Cormier, A Clear Title's other Managing Member, was making false statements to Plaintiffs and misappropriating Plaintiffs' funds. *Id*. at ¶¶ 4, 119. Plaintiffs allege that "[b]y failing to take any action to prevent the false statements and misappropriation of funds, Michalowska knowingly and substantially assisted the fraud." *Ibid*. Michalowska also knew that A Clear Title was breaching its fiduciary duties to Plaintiffs. *Id*. at ¶ 178. Plaintiffs allege that Michalowska, as a Managing Member of A Clear Title, "owed Plaintiffs a fiduciary duty to prevent any misappropriation" and that, "[b]y failing to take any action to prevent misappropriation, [she] breached her fiduciary duties to Plaintiffs." *Ibid*.

### Discussion

The second amended complaint purports to state claims against Michalowska for common law fraud, breach of fiduciary duty, and negligence, and claims against Spies for conspiracy, common law fraud, intentional infliction of emotional distress, unjust enrichment, breach of contract, fraudulent misrepresentation, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., and the federal securities laws. With respect to the state law claims, the parties do not explicitly address choice of law, but their briefs focus on Illinois law, so that is the law the court will apply. *See McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998).

I.      **Claims Against Michalowska**

   A.      **Negligence (Count XVI)**

Michalowska's only ground for dismissing the negligence claim appears to be that the second amended complaint does not satisfy the heightened pleading standards of Rule 9(b). Doc. 118 at 2-3. The argument is meritless, as Rule 9(b) applies only to claims based on "fraud or mistake," and not to negligence claims, which are governed by Rule 8(a). *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 839 n.10 ("[plaintiff's] negligent misrepresentation claim must be evaluated according to the pleading requirements of Rule 8, not the heightened pleading requirements of Rule 9").

   B.      **Breach of Fiduciary Duty (Count XIV)**

Michalowska appears to argue that the fiduciary duty claim should be dismissed because it does not comply with Rule 9(b). Doc. 118 at 2-3. But fiduciary duty claims, like negligence claims, are subject to Rule 8(a), not Rule 9(b). *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). Michalowska's only other argument on the fiduciary duty claim is that the second amended complaint "does not allege any fact to suggest that Justyna Michalowska was a fiduciary or owed Plaintiffs a duty to disclose any allegedly concealed fact." Doc. 118 at 4. Michalowska does not develop the argument any further or cite any authorities. Accordingly, Michalowska's argument that she did not owe Plaintiffs a fiduciary duty is forfeited for purposes of her motion to dismiss. *See Kramer v. Banc of Am. Secs., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

### C. Common Law Fraud (Count III)

Michalowska's motion to dismiss is directed almost exclusively to the common law fraud claim; Section I of the motion is titled "Plaintiffs' Conclusory Complaint Violates Rule 9(b)," while Section II is titled "Plaintiffs' Complaint Fails to Allege a Claim for Common Law Fraud upon which Relief Can Be Granted." Doc. 118 at 2, 4. The fraud claim relies on the theory that Michalowska aided and abetted the other defendants in defrauding Plaintiffs. Aiding and abetting is a viable theory of fraud liability under Illinois law. *See Hefferman*, 467 F.3d at 601 ("aiding and abetting is a theory holding the person who aids and abets liable for the tort itself"); *Eastern Trading Co. v. Refco, Inc.,* 229 F.3d 617, 624 (7th Cir. 2000) ("[o]ne who aids and abets a fraud is guilty of the tort of fraud"); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982) ("[a]nyone who would be guilty in a criminal proceeding of aiding and abetting a fraud would be liable under tort law as a participant in the fraud").

The elements of common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996); *see also Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005) (same). "Under Illinois law, to state a claim for aiding and abetting, one must allege (1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Hefferman*, 467 F.3d at 601 (citing *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. 2003)). A fraud claim premised on aiding and

abetting liability must satisfy the heightened pleading standards of Rule 9(b). *See ibid*. Rule 9(b) "requires that facts such as the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff be alleged in detail." *Ibid*. (internal quotation marks omitted). "In contrast, even under Rule 9(b) '[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally.' Furthermore, Rule 9(b) does not require a plaintiff to demonstrate that a representation was indeed false." *Ibid*. (quoting Fed. R. Civ. P. 9(b)).

As set forth in the Background section, the second amended complaint adequately pleads the parties who made the misrepresentations at issue, and with the times, places, and content of those misrepresentations. Doc. 68 at ¶¶ 50-53, 91-98. The complaint also alleges that Plaintiffs reasonably relied on these misrepresentations and that they suffered damages as a result. *Id*. at ¶¶ 97-102, 120-22. Those allegations are sufficient to plead a viable fraud claim. *See Hefferman*, 467 F.3d at 601-02.

With respect to Michalowska's liability for aiding and abetting the fraud, the second amended complaint alleges that she was aware that Cormier was making false statements and misappropriating Plaintiffs' funds and yet failed to take any action to stop the fraud. *Id*. at ¶ 119. The second amended complaint further alleges that Michalowska was a Managing Member of A Clear Title, *id*. at ¶ 5, from which an inference may be drawn that Michalowska would benefit from keeping Plaintiffs in the dark about the fraudulent scheme. Moreover, as noted in Section I.B, *supra*, the second amended complaint adequately pleads that Michalowska owed Plaintiffs a fiduciary duty. Those allegations are sufficient to state a fraud claim against Michalowska on an aiding and abetting theory. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006)

(holding in a common law fraud case that "the mere inaction of an alleged aider and abettor constitutes substantial assistance … if the defendant owes a fiduciary duty directly to the plaintiff") (internal quotation marks omitted); *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 252-53 (S.D.N.Y. 2011) (same); *Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) (holding that substantial assistance exists "where a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed") (internal quotation marks omitted).

## II. Claims Against Spies

Plaintiffs have agreed to voluntarily dismiss the RICO (Count I), federal securities fraud (Counts IV-VIII), and contract claims against Spies. Doc. 120 at 2. Those claims accordingly are dismissed with prejudice to the extent they are stated against Spies. The remaining claims against Spies will be discussed in turn.

### A. Conspiracy (Count II)

The elements of a civil conspiracy claim under Illinois law are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007); *Fritz v. Johnson*, 807 N.E.2d 461, 470 (Ill. 2004). Because the conspiracy alleged here involves averments of fraud, Rule 9(b) applies. *See Borsellino*, 477 F.3d at 507 ("Although claims of … civil conspiracy are not by definition fraudulent torts, Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the

rule applies will depend on the plaintiffs' factual allegations."); *Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1027-28 (N.D. Ill. 2007) (same).

The second amended complaint alleges that Spies, along with A Clear Title, Cormier, and Harrison, collectively orchestrated a scheme to defraud Plaintiffs. Doc. 68 at ¶¶ 3-4. The complaint describes in detail the alleged conspiracy, in which Spies and his co-conspirators tortiously made false and fraudulent statements to Plaintiffs with the intent of inducing Plaintiffs to deposit money into the escrow accounts. *Id*. at ¶¶ 3-102. The complaint alleges the "who, what, when, where, and how" of the fraudulent scheme. *Id*. at ¶¶ 13-15, 92-96. It therefore adequately pleads a civil conspiracy claim. *See Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894-96 (Ill. 1994).

### B. Common Law Fraud/Fraudulent Misrepresentation (Counts III & XVIII)

Although the second amended complaint brings separate claims against Spies for common law fraud and fraudulent misrepresentation, "[f]raud and fraudulent misrepresentation … are effectively the same claim." *Cocroft v. HSBC Bank USA, N.A.*, 2012 WL 1378645, at *8 (N.D. Ill. Apr. 20, 2012); *see also Connick*, 675 N.E.2d at 591 (analyzing a fraudulent misrepresentation claim as a form of common law fraud). The two claims will thus be considered together.

The second amended complaint alleges that Spies made several knowingly false and/or fraudulent statements to induce Plaintiffs to invest and maintain their money in the REFP, and that Plaintiffs thereby suffered damages; the complaint alleges the details of Spies's involvement in the scheme, including the content and timing of his allegedly false and misleading statements. Doc. 68 at ¶¶ 13-15, 92-96, 117-18, 120-22. These allegations are sufficient under Rule 9(b) to

state viable common law fraud and fraudulent misrepresentation claims. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

### C. Intentional Infliction of Emotional Distress (Count XI)

To state an intentional infliction of emotional distress claim under Illinois law, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604-05 (7th Cir. 2006); *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997); *Feltmeier v. Feltmeier,* 798 N.E.2d 75, 80 (Ill. 2003); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988); *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. 2000). The first requirement, "extreme and outrageous" conduct, turns on these factors: (1) the power and control the defendant had over the plaintiff; (2) whether the defendant reasonably believed his objective was legitimate; and (3) the defendant's awareness that the plaintiff is particularly susceptible to emotional distress. *See McGrath*, 533 N.E.2d at 809-11. Liability is triggered only when the defendant's conduct is so outrageous and extreme as to "go beyond all possible bounds of decency." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (internal quotation marks omitted). "[M]ere insults, indignities, threats, annoyances, petty oppressions or trivialities" are insufficient. *Ibid.*; *see also Van Stan*, 125 F.3d at 567 (same).

The second amended complaint's allegations against Spies fall short of stating a plausible emotional distress claim. Nowhere does the complaint allege that Plaintiffs suffered severe emotional distress as a result of the alleged scheme. That fact alone is sufficient to dismiss the

claim. *See Pub. Fin. Corp.*, 360 N.E.2d at 767 ("Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.") (internal quotation marks omitted). Moreover, while the complaint alleges that Spies "acted in an intentional and malicious manner and for the purpose of causing Plaintiffs to suffer humiliation, mental anguish and emotional and physical distress," Doc. 68 at ¶ 163, and that Spies "knew or should have known that [his] conduct would inflict severe emotional distress," *id*. at ¶ 165, the complaint does not support that conclusory boilerplate with factual allegations making it plausible to infer that Spies had or should have had that knowledge. *See Vantassell-Martin v. Nelson*, 741 F. Supp. 698, 714 (N.D. Ill. 1990).

Plaintiffs' reliance on *McGrath v. Fahey*, *supra*, is misplaced. *McGrath* held that the plaintiff there alleged a viable emotion distress claim where the defendants were alleged to have made "threats … to financially ruin plaintiff and his medical practice," conduct that "persisted despite the alleged fact that defendants had reason to believe that plaintiff might well be susceptible to heart disease, and even after plaintiff in fact had a severe heart attack." 533 N.E.2d at 812. The facts and circumstances alleged in the second amended complaint are not even remotely comparable to those in *McGrath*.

Accordingly, the emotional distress claim against Spies is dismissed. Because the court's order dismissing in part the first amended complaint stated that, "[a]bsent extraordinary circumstances, no further amendments to the complaint will be permitted," Doc. 65, the dismissal of the emotional distress claim against Spies is with prejudice.

### D. Unjust Enrichment (Count XII)

To state an unjust enrichment claim, a plaintiff must allege "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989); *see also Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (same); *compare Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (suggesting that there is no "separate cause of action" for unjust enrichment) *with Cleary*, 656 F.3d at 516 ("The Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action."). Spies argues that the unjust enrichment claim fails because the fraud claims in Counts III and XVIII fail as a matter of law. Doc. 106 at 14. However, as shown above, the fraud claims against Spies survive dismissal. Because the second amended complaint alleges that Spies fraudulently misappropriated Plaintiffs' escrow funds for his own individual purposes, Doc. 68 at ¶¶ 101-02, it follows that the unjust enrichment claim survives dismissal as well. *See Peddinghaus v. Peddinghaus*, 733 N.E.2d 797, 804 (Ill. App. 2000) ("Defendants' fraud, if proved, also constitutes unjust enrichment.").

## Conclusion

Michalowska's motion to dismiss is denied. Spies's motion to dismiss is granted with respect to Counts I, IV-VIII, XI, and XIII, and denied with respect to Counts II, III, XII, and XVIII. Counts I, IV-VIII, XI, and XII are dismissed with prejudice to the extent they are stated

against Spies. Michalowska and Spies shall answer the surviving portions of the second amended complaint by November 12, 2012.

October 22, 2012

_____
United States District Judge