UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GONDECK and PETER G. O'MALLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | 11 C 6341 |
| vs. | ) | |
| | ) | Judge Feinerman |
| A CLEAR TITLE AND ESCROW EXCHANGE, LLC, | ) | |
| STEPHEN J. CORMIER, JUSTYNA MICHALOWSKA, | ) | |
| FIDELITY NATIONAL TITLE GROUP (d/b/a CHICAGO | ) | |
| TITLE INSURANCE COMPANY and TICOR TITLE), | ) | |
| CHICAGO TITLE INSURANCE COMPANY, TICOR | ) | |
| TITLE INSURANCE COMPANY, SRV ASSOCIATES, | ) | |
| LLC, THE LUX GROUP, LLC, SRV HOLDINGS & | ) | |
| ASSOCIATES, LLC, MAREK R.V. HARRISON, and | ) | |
| MICHAEL SPIES, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs James Gondeck and Peter G. O'Malley allege in this suit that they were the victims of a fraudulent scheme involving the improper withdrawal and misappropriation of funds they had deposited into an escrow account maintained by Defendant A Clear Title and Escrow Exchange, LLC ("A Clear Title") at Fifth Third Bank. Doc. 68. The suit has been the subject of three prior opinions. 2012 WL 5200091 (N.D. Ill. Oct. 22, 2012); 2012 WL 3638321 (N.D. Ill. Aug. 22, 2012); 2012 WL 773119 (N.D. Ill. March 8, 2012). Now before the court is Plaintiffs' motion for summary judgment against A Clear Title on Counts XIII (breach of contract), XIV (breach of fiduciary duty), and XVI (negligence) of their second amended complaint. Doc. 188. A Clear Title did not respond, but Defendants Chicago Title Insurance Company and Ticor Title (together, "Chicago Title") have filed a response because Plaintiffs have sought to hold them

vicariously liable on an agency theory for A Clear Title's conduct. Doc. 202 at 6 n.1. For the following reasons, Plaintiffs' motion is denied.

## Background

Although the full factual background of this case is extensive, the facts necessary to resolve Plaintiffs' motion—which are stated as favorably to A Clear Title as permitted by the record and Local Rule 56.1—are relatively simple.

### A. Gondeck's Transaction with A Clear Title

In 2010, Gondeck sought financing to purchase land and construct a new home in Long Grove, Illinois. Doc. 214 at ¶ 1. Gondeck initially tried traditional lending sources but was unhappy with the terms being offered. *Id*. at ¶ 2. In or around July 2010, Defendant Michael Spies presented Gondeck with an alternative source of financing called the Proof of Funds ("POF") Program, which involved Defendant Marek Harrison and his affiliated companies, Defendants SRV Associates, LLC, Lux Group, LLC, and SRV Holdings & Associates, LLC (collectively, "SRV"). *Id*. at ¶ 9. Gondeck was told that if he deposited $250,000 into A Clear Title's escrow account at Fifth Third Bank, that money would be used as "proof of funds" that would assist Harrison and SRV negotiate a bank guarantee or standby letter of credit. *Id*. at ¶ 10 (citing Plaintiffs' second amended complaint, Doc. 68 at ¶¶ 49-50).

On July 6, 2010, Gondeck and A Clear Title entered into an Escrow Release, under which Gondeck was to deposit $250,000 ("Gondeck Escrow Funds") into A Clear Title's escrow account. Doc. 203 at ¶ 9; Doc. 203-1 at 183. The Escrow Release was signed on A Clear Title's behalf by its Managing Member, Defendant Stephen Cormier. Doc. 203 at ¶ 9. The Escrow Release stated that the Gondeck Escrow Funds were "for the purchase of completing POF (proof

of funds) for the negotiation of a BG (bank guarantee)," that the "funds shall be held in escrow for 21 (twenty-one) days," and that A Clear Title "further agrees to release said funds back to Mr. Gondeck on the 22nd day unless instructed otherwise by Mr. Gondeck." Doc. 203 at ¶ 10; Doc. 203-1 at 183. In exchange for Gondeck's deposit, an unnamed investor was to provide Gondeck with $2.2 million in funding and take a fifty-percent equity stake in Gondeck's future home. Doc. 214 at ¶ 12; Doc. 203-1 at 195. On July 6, 2010, Spies emailed Gondeck, under the subject "$250k Deposit Terms," saying:

> **In consideration of your POF [Proof of Funds] deposit of $250k, I will provide the following:**
>
> -Restructure the Alakai Hotel & Suites operating agreement to include you as a 1/5 partner post acquisition.
>
> -Refund $81.3k, $16.1k, and $55k for a total of **152.4k** at closing of the Alakai (this figure can be reduced by Sovren/MVG refunds that may be occur prior to the Alakai closing).
>
> -I will keep my $500k POF on deposit with ACTAEE (Chicago Title Agent) in order to help facilitate your Long Grove project and Don's lake house.
>
> -I will facilitate a 100% Loan to Value - 50% JV on your project which would have **no debt servicing** ….

Doc. 214 at ¶ 14; Doc. 203-1 at 195.

A day later, on July 7, 2010, Gondeck entered into a Sole Order Escrow Agreement with A Clear Title. Doc. 203 at ¶ 11; Doc. 203-1 at 185. Cormier signed the Agreement on A Clear Title's behalf. Doc. 203 at ¶ 11. The Agreement stated that the Gondeck Escrow Funds would be deposited into escrow and that "said funds are solely owned by Mr. James Gondeck." *Id*. at ¶ 12; Doc. 203-1 at 185. The Agreement further provided that "[i]n no case shall the above

mentioned deposits be surrendered except on an order signed by the party hereto, its respective legal representatives or assigns, or order of court as aforesaid." Doc. 203-1 at 185.

On July 8, 2010, Gondeck sent $250,000 by wire transfer to A Clear Title's escrow account at Fifth Third Bank. Doc. 203 at ¶ 13. On August 17, 2010, Gondeck and A Clear Title entered into another Sole Order Escrow Agreement, which extended to August 31, 2010, the deadline for returning the Gondeck Escrow Funds. *Id*. at ¶ 14; Doc. 190-7. Other than the deadline for returning the Gondeck Escrow Funds, the terms of the August 17, 2010 Agreement were the same as those of the July 6, 2010 Agreement. Doc. 203 at ¶ 15. Gondeck and A Clear Title then entered into an Addendum to Escrow Release, dated October 12, 2010. *Id*. at ¶ 16. The Addendum stated that A Clear Title would continue to hold the Gondeck Escrow Funds in escrow as proof of funds until October 31, 2010. *Id*. at ¶ 17; Doc. 190-8. On November 15, 2010, A Clear Title sent a letter to Gondeck "to confirm that James Gondeck has $250,000.00 USD in our escrow account for the purpose of proof of funds and the purchase of a Bank Guarantee." Doc. 203 at ¶ 18; Doc. 190-9. Despite repeated requests, A Clear Title has not returned the Gondeck Escrow Funds to Gondeck. Doc. 203 at ¶ 20.

**B.     O'Malley's Transaction with A Clear Title**

In or around November 2010, Spies recommended to O'Malley a deal similar to the Gondeck transaction involving A Clear Title, Harrison, and SRV. Doc. 203 at ¶ 25. O'Malley claims that as he understood the deal, he was to deposit $250,000 ("O'Malley Escrow Funds") into A Clear Title's escrow account at Fifth Third Bank as proof of funds for twelve days, although he would retain custody and control over his money at all times. Doc. 214 at ¶¶ 21-22.

In return, O'Malley was to receive $100,000. *Id*. at ¶ 23. Despite repeated requests, A Clear Title has not returned the O'Malley Escrow Funds to O'Malley. Doc. 203 at ¶ 34.

### C. Plaintiffs' Oral Authorization To the Withdrawal of the Escrow Funds

In its Local Rule 56.1(b)(3)(B) response to Plaintiffs' Local Rule 56.1(a)(3) statement, Chicago Title asserts that Gondeck and O'Malley orally consented to the withdrawal of their Escrow Funds from A Clear Title's escrow account. *Id*. at ¶¶ 19, 33. Chicago Title makes the same assertion in its Local Rule 56.1(b)(3)(C) statement of additional facts. *Id*. at p. 16, ¶¶ 38-40. To support its factual assertion, Chicago Title cites two documents. The first is an email sent by Harrison to Plaintiffs' counsel on June 23, 2011, which states in relevant part: "Jim Gondeck gave full verbal permission for his funds to be used regarding this transaction to myself and also the title company. The matter has been discussed with Jim on several occasions since, and also confirmed via phone." Doc. 203-1 at 2. The second is a letter that Cormier sent to Great American Insurance Group (A Clear Title's then-insurer) on January 9, 2012, which states in relevant part that "Mr. Gondeck and Mr. O'Malley both agreed and stated their money could be released for the purchase of a bank guarantee," that "both gentlemen gave me verbal authority and permission to release the funds," and that "Harrison was on the phone line and heard both of these gentlemen give permission to release the funds." Doc. 203-1 at 6.

Plaintiffs moved to strike the Harrison email (but not the Cormier letter) on authenticity and hearsay grounds. Doc. 215. The court denied the motion. Doc. 219. Because Harrison's email was sent in response to an email from Plaintiffs' counsel, and because Plaintiffs' counsel acknowledged on the record that he received Harrison's email, the court rejected the authenticity challenge. *See United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012) (holding that emails

may be authenticated "using circumstantial evidence"); *Fenje v. Feld*, 301 F. Supp. 2d 781, 809 (N.D. Ill. 2003) (holding that an email may be authenticated based on "the e-mail address from which it originated"). With respect to hearsay, Plaintiffs argued that Gondeck's out-of-court statement was inadmissible hearsay. Doc. 215 at 3. That is incorrect. Gondeck's out-of-court statement is admissible under Federal Rule of Evidence 801(d)(2)(A) as the statement of a party opponent, and in any event is a verbal act (giving permission to somebody else to take certain action) not offered for the truth of the matter asserted. *See Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007). No other hearsay objection is apparent from Plaintiffs' motion to strike or from their other summary judgment submissions, so any such objection is forfeited for purposes of this summary judgment motion. If this case is tried, Plaintiffs are free to present any other hearsay objections to Harrison's email.

Even if the Harrison email had been stricken, Chicago Title's assertion Gondeck and O'Malley orally consented to the withdrawal of their Escrow Funds from A Clear Title's escrow account would find adequate factual support in Cormier's letter. Plaintiffs did not move to strike Cormier's letter, but they do argue in their Local Rule 56.1(b)(3)(B) response to Chicago Title's Local Rule 56.1(b)(3)(C) statement argues that the letter "contains inadmissible hearsay." Doc. 214 at ¶¶ 39-40. Plaintiffs do not develop their hearsay argument or provide any supporting authority, either in their Local Rule 56.1(b)(3)(B) response or in their summary judgment reply brief. (In fact, the reply brief objects on hearsay grounds only to the Harrison email, not to the Cormier letter. Doc. 213 at 4-5.) Plaintiffs' failure to develop their hearsay argument or cite supporting authority forfeits the point, at least for purposes of this summary judgment motion. *See ArlinGolf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011) (where the

party "cited no relevant legal authority to the district court to support the proposition … the argument is waived"); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407-08 (7th Cir.2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to [the defendant's] motion for summary judgment."), *aff'd on other grounds*, 553 U.S. 442 (2008).

Accordingly, resolving all genuine factual disputes in A Clear Title's favor, the court will assume for purposes of summary judgment that Gondeck and O'Malley orally authorized and consented to the withdrawal of their Escrow Funds from A Clear Title's escrow account.

## Discussion

### I. Breach of Contract (Count XIII)

Plaintiffs' contract claim alleges that A Clear Title breached its contractual obligations by withdrawing (or allowing the withdrawal of) their Escrow Funds from A Clear Title's escrow account at Fifth Third Bank without their authorization. Doc. 68 at ¶¶ 74, 90, 170-173. The parties do not discuss choice of law, so the contract claim will be analyzed under the law of the forum state, Illinois. *See Kochert v. Adagen Med. Int'l, Inc.,* 491 F.3d 674, 677 (7th Cir. 2007) ("Where the parties have not identified a conflict in state law, we will generally apply the law of the forum state."). Under Illinois law, a plaintiff alleging breach of contract must show: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC, v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. 2004)); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012); *Roberts v. Adkins*, 921 N.E.2d 802, 810 (Ill. App. 2010). Chicago Title argues

that summary judgment is inappropriate because "Plaintiffs have not proven the breach of any contract by A Clear Title." Doc. 202 at 6.

According to Chicago Title, "[a] factual dispute … exists regarding whether Plaintiffs orally authorized the release of their funds." Doc. 202 at 6. In support, Chicago Title points to the Harrison email and the Cormier letter. As discussed in the Background section, those documents—at least on summary judgment, given the limited arguments that Plaintiffs made in their summary judgment papers—create a genuine issue as to whether Plaintiffs orally consented to the withdrawal of his Escrow Funds from the escrow account. And if Plaintiffs consented, A Clear Title cannot have breached its contractual obligation to maintain the funds in its escrow account.

In response, Gondeck denies that he gave Harrison or anyone at A Clear Title permission to release his Escrow Funds. Doc. 213 at 4 & n.1. Gondeck questions the veracity of Cormier's letter, arguing that "Cormier's prior claims of authorization were false" and that "Cormier, when asked about his prior statements regarding the alleged authorizations provided by Plaintiffs … , invoked the protections afforded him by the Fifth Amendment against self-incrimination." *Id*. at 5. Whether Gondeck in fact orally consented to the withdrawal of his Escrow Funds must be resolved by the jury at trial, not by the court at summary judgment. *See Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 852 (7th Cir. 2005) ("whether a contract has been modified is a question of fact"); *Midway Park Saver v. Sarco Putty Co.*, 976 N.E.2d 1063, 1072 (Ill. App. 2012) ("When extrinsic evidence is used to show modification of a contract, the question of the final agreement of the parties is usually a question of fact to be presented to the jury."); *Janda v. U.S. Cellular Corp.*, 961 N.E.2d 425, 437 (Ill. App. 2011) (same); *E.A. Cox Co. v. Road Savers*

*Int'l Corp.*, 648 N.E.2d 271, 277 (Ill. App. 1995) (same). The same holds for any argument regarding the credibility of Harrison's and Cormier's statements or the weight their statements should be given; "district courts presiding over summary judgment proceedings may not weigh conflicting evidence, or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704-705 (7th Cir. 2011) (internal quotation marks and citations omitted); *see also Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir. 1995) (where the resolution of the plaintiff's claim depends on whether certain testimony is to be believed, "[t]his credibility judgment is best left to the finder of fact").

Gondeck also contends that even if he provided oral authorization to release the Escrow Funds, his contract with A Clear Title "clearly requires written authorization." *Id*. at 6. That contention is wrong as a legal matter. Although Gondeck's agreement with A Clear Title provided that a "signed" order was necessary before his deposits could be "surrendered," Doc. 203-1 at 185, "[i]t is settled law in Illinois that … parties may modify contracts orally after including a contract provision that precludes oral modification." *Williams v. Jader Fuel Co.,* 944 F.2d 1388, 1395 (7th Cir. 1991) (internal quotation marks omitted); *see also U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 331 (7th Cir. 2009) ("under Illinois law, the terms of a written contract can be modified by a subsequent oral agreement notwithstanding contractual language to the contrary"); *Air Line Pilots Ass'n, Int'l v. Midwest Express Airlines, Inc.*, 279 F.3d 553, 557 (7th Cir. 2002) (same); *Tadros v. Kuzmak*, 660 N.E.2d 162, 170 (Ill. App. 1995) ("The law seems well settled; the terms of a written contract can be modified by a subsequent oral agreement even though, as in this case, the contract precludes oral modifications."). Moreover, "[u]nder Illinois law, … a contracting party may waive provisions beneficial to it or waive strict

compliance by conduct or actions indicating that strict compliance with a particular provision will not be required." *In re Krueger*, 192 F.3d 733, 738 (7th Cir. 1999) (internal quotation marks omitted); *see also Midway Park Saver*, 976 N.E.2d at 1072 ("extrinsic evidence is admissible to show a subsequent oral agreement which modifies the terms of the written contract or to show that a provision of a written contract has been waived") (internal quotation marks omitted); *Barker v. Leonard*, 635 N.E.2d 846, 848 (Ill. App. 1994).

The genuine dispute over whether Gondeck orally consented to the withdrawal of his Escrow Funds from A Clear Title's escrow account at Fifth Third Bank fatally undermines his request for summary judgment on the contract claim. The same holds for O'Malley, given the genuine dispute regarding whether he orally consented as well. This is so regardless of whether O'Malley entered into a written contract that allowed withdrawal of his Escrow Funds (as Chicago Title argues) or whether O'Malley's transaction was governed by terms similar to those governing Gondeck's transaction (as O'Malley argues).

## II.     Breach of Fiduciary Duty (Count XIV)

Plaintiffs' fiduciary duty claim alleges that A Clear Title, by withdrawing (or allowing the withdrawal of) their Escrow Funds from the escrow account, breached its fiduciary duty as an escrow agent to ensure that the Escrow Funds were properly and safely maintained in the account. Doc. 68 at ¶¶ 174-179. "Under Illinois law … , recovery for a breach of fiduciary duty requires proof of three elements: '[1] a fiduciary duty exists, [2] that the fiduciary duty was breached, and [3] that such breach proximately caused the injury of which the plaintiff complains.'" *Gross v. Town of Cicero,* 619 F.3d 697, 709 (7th Cir. 2010) (quoting *Neade v. Portes,* 739 N.E.2d 496, 502 (Ill. 2000)). Chicago Title argues that the record would allow a

reasonable jury to find that no breach occurred because A Clear Title acted in accordance with Plaintiffs' authorization to the withdrawal of the Escrow Funds. That is correct, and the genuine factual dispute on that point forecloses summary judgment on the fiduciary duty claim. *See Johnson v. Maki & Assocs., Inc.*, 682 N.E.2d 1196, 1199 (Ill. App. 1997) ("the escrowee owes a fiduciary duty to act only in accordance with the terms of the escrow instructions"); *Meyers v. Rockford Sys., Inc.*, 625 N.E.2d 916, 922 (Ill. App. 1993) (same); *McDonald v. Washington Mut. Bank, FA*, 2000 WL 967994, at *5 (N.D. Ill. July 11, 2000) (same).

### III. Negligence (Count XVI)

Plaintiffs' negligence claim alleges that A Clear Title breached its duty to act in a reasonably prudent manner by allowing the withdrawal of the Escrow Funds without Plaintiffs' consent. Doc. 68 at ¶¶ 187-189. Once again, the genuine dispute regarding whether Plaintiffs consented to the withdrawal forecloses summary judgment on the negligence claim. Given this holding, there is no need to address Chicago Title's alternative arguments that the negligence claim is barred by the economic loss doctrine or by Plaintiffs' own misconduct.

### Conclusion

For the foregoing reasons, Plaintiffs' partial motion for summary judgment against A Clear Title on Counts XIII, XIV, and XVI of the second amended complaint is denied.

August 28, 2013

_____
United States District Judge